IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DOUGLAS RANDALL,[1] | § | |
| | § | No. 210, 2019 |
| Respondent, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN12-01775 |
| LAURA ARNOLD, | § | Petition No. 18-26369 |
| | § | |
| Petitioner, | § | |
| Appellee. | § | |

Submitted: January 10, 2020
Decided: March 9, 2020

Before **SEITZ**, Chief Justice; **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

## ORDER

After consideration of the opening brief and the record on appeal, it appears to the Court that:

(1) The appellant, Douglas Randall ("the Father"), filed this appeal from a Family Court order granting the petition for custody filed by Laura Arnold ("the Mother"). For the reasons discussed below, we affirm the Family Court's judgment.

(2) The parties are the parents of two children, one born in 2008 and one born in 2011 ("the Children"). Since January 2014, they had operated under the terms of a consent protection-from-abuse order ("PFA") entered on the Mother's

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

behalf.  Under that order, the parties had temporary joint legal custody and shared residential placement of the Children.

(3)  On August 31, 2018, the Mother filed a petition for custody.  She alleged that she was primarily responsible for the Children's care and that she had safety concerns based on the Father's history of domestic violence.  The Father disputed the Mother's allegations and opposed her petition.

(4)  On March 26, 2019, the Family Court held a hearing on the Mother's petition.  Both the Mother and the Father, who was late for the hearing, testified.  On May 1, 2019, the Family Court issued its decision.  After weighing the best-interests factors under 13 *Del. C.* § 722, the Family Court granted the Mother sole legal custody and primary residential placement of the Children.  The Father was granted supervised visitation every other weekend on the condition that his girlfriend, with whom he had a recent domestic-violence incident, was not present.  This appeal followed.

(5)  This Court's review of a Family Court decision includes a review of both the law and the facts.[2]  Conclusions of law are review*ed de novo*.[3]  The Family Court's factual findings will not be disturbed on appeal if they are supported by the record and are the product of an orderly and logical deductive process.[4]  Under

---

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

Delaware law, the Family Court must determine legal custody and residential arrangements for a child in accordance with the best interests of the child. The criteria for determining the best interests of a child are set forth in 13 *Del. C.* § 722.[5]

(6)     On appeal, the Father argues that Family Court erred in finding that the fourth (the children's adjustment to their home, school, and community), sixth (the parents' past and present compliance with their rights and responsibilities), seventh (evidence of domestic violence), and eighth (the criminal history of the parties) best-interests factors weighed in favor of granting the Mother's petition for custody. As to the fourth and sixth factors, the Family Court accepted the Mother's testimony that she handled most aspects of childcare and consistently made decisions on the children's behalf. The Father argues that both parents enrolled the Children in school and that he took the Children to extracurricular activities. He also argues, as he did below, that he supported the Children financially and included them on his health insurance policy. He claims that the Mother only sought custody so that she could obtain child support from him.

---

[5] The best-interests factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding his custodians and residential arrangements; (iii) the interaction and interrelationship of the child with his parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722.

(7) The Family Court acknowledged the Father's testimony regarding extracurricular activities and his support of the Children, but also noted that he did not believe it was necessary for him to take parenting classes. Most significantly, the Family Court found the Father less credible than the Mother based on his inconsistent testimony. The Father initially testified that he lived with his girlfriend (with whom he had a no-contact order) and other children, later testified that he lived with himself or his mother at a different address, and then later refused to provide the address where he lived. When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, we will not substitute our opinion for that of the trier of fact.[6] The record supports the Family Court's conclusion that the fourth and sixth best-interests factors weighed in favor of the Mother.

(8) In finding that the seventh best-interests factor weighed in favor of the Mother, the Family Court reviewed the Mother's testimony regarding the Children's presence during a domestic violence incident between the Father and his girlfriend. The Family Court also took judicial notice of the consent PFA order entered on the Mother's behalf in 2014. The Father acknowledges the consent PFA order, but argues that both he and the Mother were charged in connection with the 2014

---

[6] *Wife (J.F.V.)*, 402 A.2d at 1204.

incident. The Father ignores that the charges against the Mother were dismissed while he pleaded guilty to menacing and offensive touching in connection with the 2014 incident. The record supports the Family Court's conclusion that the seventh best-interests factor weighed in favor of the Mother.

(9) Finally, the Father argues that the Family Court erred finding that eighth best-interests factor weighed in favor of the Mother. The Family Court reviewed the criminal histories of the parties and their significant others in concluding that this factor weighed in favor of the Mother. The Father argues that 2018 charges involving his girlfriend were false and eventually dismissed, but he does not dispute that those charges were outstanding at the time of the Family Court hearing and decision. In addition, as previously discussed, the Father had convictions for menacing and offensive touching where the Mother was the victim. The Family Court did not err in concluding that the eighth best-interests factor weighed in favor of the Mother.

(10) Having carefully reviewed the opening brief and the record on appeal, we find no error abuse or abuse of discretion in the Family Court's decision. The Family Court correctly applied the law and considered the best-interests factors under 13 *Del. C.* § 722. We therefore affirm the Family Court's judgment.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family

Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice